

Ditech Financial LLC
PO Box 6172
Rapid City, SD 57709-6172
Phone: 1-877-624-8026
Fax: 1-866-870-9919
https://ditech.com

March 24, 2016

Larry D Harris
2306 150TH St E
Tacoma, WA 98445

RE: Ditech Financial LLC ("Ditech")
Customer Name(s): Larry D Harris, Katleen M Harris
Account Number: 97
Property Address: 2306 150TH St E
Tacoma, WA 98445

## Account Modification
## TRANSPARENCY NOTICE

This Account Modification Summary is intended to be a clear and simple summary of the final account modification that we are pleased to offer you. We believe the account modification will help put you in a better position to meet your account obligation. When you sign and return the enclosed account modification agreement, you are agreeing to a new and permanent account modification. Please thoroughly review all of the enclosed documents to ensure that you understand the details of your account modification agreement.

### Summary of Your Modified Account:

Your new balance is $393,473.79. To calculate this new account balance, we added past due interest in the amount of $57,732.92 and eligible servicing expenses of $2,988.31 and taxes and insurance of $76,399.25 totaling $137,120.48 to your principal balance. Unpaid late fees are not included in this amount and will be waived when your account modification is finalized. If your account has mortgage insurance, the mortgage insurance premium may increase as a result of the higher mortgage loan balance.

The current interest rate of 5.75% is staying at 3.875% for the life of your modified account.

Tax Consequences: We are required to report any debt forgiveness to the Internal Revenue Service. This may result in consequences regarding your federal, state or local tax liability. In addition, if you receive public assistance, the forgiveness of debt may affect your eligibility for these benefits. Ditech cannot provide any advice or guidance regarding possible tax consequences or effect on any public assistance benefits. You may wish to consult with your tax professional about any possible tax consequences and/or your public assistance office regarding other consequences that may result from the forgiveness of debt.

Your final payment date, which is your new maturity date, is 03/01/2056.

### Your New Mortgage Payments:

Your new total modified monthly mortgage payments of $1,542.99 are made up of principal and interest of $1,129.73 and an initial escrow amount of $413.26. Escrow payments are collected for payment of items such as property taxes and insurance and may change. We will notify you of any adjustments to the total monthly payment.

If you have questions regarding the modification agreement or the steps you must take to complete this process, please call your assigned account representative Celia D at (877) 624-8026, extension 85420, Monday through Friday 7am – 8pm and Saturday 7am – 1pm CST.

Mod Transparency Notice, 09/18/2015

LTR-431

Sincerely,

Ditech
1-877-624-8026
Monday through Friday 7am – 8pm and Saturday 7am – 1pm CST

Investor Loan          34

When Recorded, Return to:
Ditech Financial LLC
Attn: Loss Mitigation
301 W. Bay Street
Jacksonville, FL 32202

This document was prepared by Ditech Financial LLC.

_____ [Space Above This Line For Recording Data] _____



# LOAN MODIFICATION AGREEMENT

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE CURRENTLY IN BANKRUPTCY OR YOUR LOAN WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY.**

This Loan Modification Agreement ("Agreement"), made March 24, 2016, between Larry D Harris, AND Katleen M Harris, Married ("Borrower") and Ditech Financial LLC, amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 07/05/2007 and recorded in Book or Liber NA, at page(s) NA, and/or Document # 200707061343 of the Official Records of PIERCE COUNTY, WASHINGTON.

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 2306 150TH St E, Tacoma, WA, 98445, the real property described in the above-referenced Security Instrument.

SEE ATTACHED EXHIBIT "A"

Parcel ID Number: 2697000060

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 03/01/2016, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $393,443.79 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.875%, from 03/01/2016. Borrower promises to make monthly payments of principal and interest of U.S. $1,129.73, beginning on the 04/01/2016, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.875% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Borrower may refer to the monthly billing statement for the escrow amount owed. If on 03/01/2056 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-40 | 3.875% | 03/01/2016 | $1,129.73 | 04/01/2016 | 460 |

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

   Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property

or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

4. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest

Case 13-47559-BDL    Doc 39-1    Filed 04/26/16    Ent. 04/26/16 16:12:06    Pg. 5 of 9

to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

*This area intentionally left blank.*

In Witness Whereof, the Lender and I have executed this Agreement.

Ditech Financial LLC

Account Number: 597

| | |
|---|---|
| _____ | _____ (Seal) |
| Lender | Larry D Harris Borrower |
| | 4-6-16 |
| By: _____ | Date |
| *Name: _____ | |
| Title: _____ | |
| License Number: _____ | *Kathleen Harris* |
| | Katleen M Harris Borrower (Seal) |
| _____ | 4-6-16 |
| Date | Date |

_____ [Space Below This Line For Acknowledgments] _____

State of __Washington__

County of __Pierce__

    I HEREBY CERTIFY that on this __6__ day of __April__, 2016, before me, the subscriber, a Notary Public of the state of Washington, in and fore the jurisdiction aforesaid, personally appeared, Larry D Harris and Katleen M Harris, known to me or satisfactorily proven to be the persons whose names are subscribed to within this instrument and acknowledged that they executed the same for the purposes therein contained.

_____
Notary Public

__Kathleen S. Hajny__
Print Name

My commission expires: __04-28-2016__

```
KATHLEEN S. HAJNY
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
04-28-16
```